UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

HARRY J. COOPER

        Plaintiff,

        v.                          **REPORT AND RECOMMENDATION**
                                    **7:09-CV-0062 (TJM/VEB)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.   Introduction

Plaintiff, Harry J. Cooper brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[1]

## II.   Background

On May 16, 2005, Plaintiff, then 44 years old, filed an application for SSI and DIB, claiming disability since October 24, 2004, because of a spinal injury (R. at 76-80).[2] His application was denied initially on September 9, 2005 (R. at 45-49). Plaintiff filed a timely request for a hearing on October 1, 2005 (R. at 50-54).

On September 27, 2007, Plaintiff and his attorney appeared before the ALJ (R. at 245-85).The ALJ considered the case *de novo* and, on October 25, 2007, issued a decision finding Plaintiff was not disabled (R. at 28-41). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated September 1, 2009.
[2] Citations to the underlying administrative record are designated as "R."

1

request for review on January 9, 2009 (R. at 4-6). On January 19, 2009, Plaintiff filed this action disputing his disability determination.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

### III.   Discussion

#### A.  Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[4] to determine whether an individual is disabled as defined under the Social Security Act.

---

[4] The five-step process is detailed as follows:
First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.
Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

Based on the entire record, the Court recommends remand because the ALJ failed to properly apply the treating physician rule or explain the weight he gave to the treating physicians' opinions, and failed to explain the weight he gave to the consultative examining physician's opinions, which created errors in the RFC and remaining analysis.

    **B. Analysis**

        **1.    The Commissioner's Decision**

The ALJ applied the initial sequential evaluation and found that "the claimant was disabled . . . from October 24, 2004 through April 5, 2006" (R. at 32). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 24,

2004, the alleged onset of disability (R. at 35). At step two, the ALJ found that Plaintiff had the following severe impairments: "a herniated disc at the C5-6 level with cervical radiculopathy (status post C5-6 discectomy, foraminotomy, and fusion[5] on May 17, 2005) and degenerative disc narrowing at L5-S1" (R. at 35). At step three, the ALJ found that Plaintiff's impairments did not, either individually or in combination, meet or equal a Listing (R. at 36). The ALJ found that from October 24, 2004 through April 5, 2006, Plaintiff had the residual functional capacity ("RFC") to lift and carry less than ten pounds occasionally, sit for less than six hours, and stand or walk for less than two hours (R. at 36). In determining this RFC, the ALJ considered opinions from the disability analyst; the State agency examining physician, James Naughton, D.O.; and Plaintiff's neurosurgeon, John Krawchenko, M.D. (R. at 36). The ALJ also considered Plaintiff's subjective complaints of pain, loss of motion and loss of feeling, finding him credible for the above time period (R. at 37). Based on this RFC, the ALJ found that Plaintiff could not perform his past relevant work or any other work that existed in significant numbers (R. at 37). Then, the ALJ found that by April 6, 2006 Plaintiff experienced medical improvement, related to the ability to work (R. at 38). The ALJ found that as of April 6, 2006, Plaintiff had the RFC to lift and carry up to ten pounds occasionally and less than ten pounds frequently; sit for six hours; stand or walk for two hours; and occasionally climb, balance, stoop, kneel, crouch, crawl, and handle or finger with the left upper extremity (R. at 39). In determining Plaintiff's April 6, 2006 RFC the ALJ found that Plaintiff's subjective complaints were "less than fully credible" (R. at 39).

---

[5] Plaintiff's surgery involved removing the disc material from between the C5 and C6 vertebrae, enlarging the space for his nerves, and fusing the C5 and C6 vertebrae with a plate and screws (R. at 178-80, 207-09).

The ALJ found that Plaintiff's impairments remained severe and that he could still not perform his past relevant work (R. at 39). Relying in part on the testimony of vocational expert ("VE") George Parsons, Ph.D., the ALJ concluded that with the April 6, 2006 RFC, Plaintiff could perform work at the sedentary level as a surveillance system monitor, stock clerk, hand packer, inspector, freight stock clerk, or assembler (R. at 40). Therefore, the ALJ found that Plaintiff's disability ended on April 6, 2006 (R. at 40).

### 2. Plaintiff's Claims

Plaintiff argues that the ALJ (a) improperly assessed his treating physicians' opinions; (b) erred in assessing the consultative examining physician's opinions; (c) erred in not finding Plaintiff met Listing 1.04(A); (d) erred in assessing Plaintiff's credibility; (e) improperly found that Plaintiff experienced medical improvement; and (f) misrepresented the VE's testimony. Plaintiff's Brief, pp. 10-24.

### a. The ALJ Failed to Apply the Treating Physician Rule

Plaintiff argues generally that the ALJ "failed to afford controlling weight to the opinion of plaintiff's treating physician." Plaintiff's Brief, p. 14. Defendant argues that treating physician, Dr. Krawchenko's opinions were on matters reserved to the Commissioner. Defendant's Brief, pp. 16-17.

The treating physician rule requires an ALJ to give controlling weight to a "treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79

(2d Cir. 1999). Moreover, the ALJ "will always give good reasons . . . for the weight [he] give[s] [a] treating source's opinion." Id.

In this case, neurosurgeon, John Krawchenko, M.D. treated Plaintiff regularly since June of 2004 for a cervical spine injury (R. at 197-217, 232). An MRI from June 2004 showed Plaintiff had a large herniation at the C5-6 disc with associated uncinate spur (R. at 184). On May 17, 2005, Dr. Krawchenko performed a discectomy, foraminotomy and spinal fusion from C5 to C6 (R. at 178-80, 207-09). After surgery, Dr. Krawchenko's treatment notes indicated Plaintiff's recovery was slow and he noted Plaintiff's prognosis was "very guarded" and "guarded for total recovery" (R. at 197-204).

Dr. Krawchenko's treatment note from April 5, 2006 is particularly important because the ALJ relied on opinions from that note to conclude that Plaintiff experienced medical improvement by April 6, 2006 and to conclude that Plaintiff's RFC as of April 6, 2006 was consistent with sedentary work (R. at 38-39, 198). On April 5, 2006, Dr. Krawchenko opined:

> He remains totally disabled. He will increase his Lyrica[6] from 100 mgs [twice a day] to 100 mgs [three times a day]. He will decrease his Vicodin[7] from [a maximum daily dose] of 5 to [a maximum daily dose] of 4. He will slowly increase activities as tolerated, still on restricted activities, no lifting greater than 5-10 lbs., changing positions and needing periods of rest as needed.

(R. at 198).

---

[6] Lyrica is a preparation of pregabalin, indicated for use in treating neuropathic pain. Physicians' Desk Reference 2527 (63rd ed. 2009).
[7] Vicodin is a preparation of the pain reliever, Hydrocodone, which is a "semisynthetic opiod analgesic derived from codeine but having more powerful sedative and analgesic effects." Dorland's Illustrated Medical Dictionary 890 (31st ed. 2007).

The ALJ weighed Dr. Krawchenko's opinions in two separate findings. First, the ALJ gave "little weight" to Dr. Krawchenko's statements that Plaintiff was "disabled" or "unable to work" (R. at 36). The Court finds that the ALJ properly rejected Dr. Krawchenko's opinions that Plaintiff was "disabled," because, as Defendant argued, the issue of "whether [a claimant] meet[s] the statutory definition of disability" is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).

Second, the ALJ weighed the remainder of Dr. Krawchenko's opinions in a single sentence: "Greater weight has been given to specific restrictions given by Dr. Krawchenko" (R. at 36). The Court finds that on the face of the decision the ALJ did not apply the treating physician rule. In other words, although the ALJ granted Dr. Krawchenko's opinions great weight, he did not assess whether the opinions were entitled to controlling weight or provide "good reasons" for denying them controlling weight. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The ALJ's failure to explain the weight he gave to Dr. Krawchenko's opinions was significant because although he adopted some of the opinions, he rejected other key opinions. For example, the ALJ adopted Dr. Krawchenko's opinions for the period prior to April 5, 2006 (R. at 37) ("The residual functional capacity finding for the period from October 24, 2004 through April 5, 2006 is based on Dr. Krawchenko's statements regarding claimant's specific physical limitations during the period prior to April 5, 2006."). However, for the period beginning April 6, 2006, the ALJ adopted only some of Dr. Krawchenko's opinions (R. at 38-39). Specifically, the ALJ found that as of April 6, 2006, Plaintiff had the RFC to lift and carry ten pounds occasionally and less than ten pounds frequently; to sit for six hours; to stand or walk for two hours; and to only

occasionally climb, balance, stoop, kneel, crouch, crawl, and handle or finger with the left arm (R. at 38). In formulating this RFC, the ALJ explicitly relied upon Dr. Krawchenko's April 5, 2006 opinions, stating: "Dr. Krawchenko's comment on April 5, 2006 that the claimant can lift up to ten pounds and can slowly increase his activities as tolerated . . . supports a conclusion that the claimant now has the ability to perform sedentary work" (R. at 39). However, the ALJ failed to recognize and omitted a discussion of Dr. Krawchenko's opinions to the effect that Plaintiff needed to change positions and take periods of rest as needed (R. at 198). The opinions the ALJ rejected were critical because the VE testified that no jobs would be available for a person with the above RFC if they also had to change positions at will and needed more than one unscheduled break or rest period (R. at 283-84). Thus, if Dr. Krawchenko's opinions were entitled to controlling weight, then based upon the VE's testimony, the Plaintiff should have been found disabled at step five.

 Even absent an explicit application of the treating physician rule, had the ALJ adopted Dr. Krawchenko's opinions in their entirety, the Court could have concluded that the ALJ had applied the substance of the rule and granted the opinions controlling weight. See Halloran v. Barnhart, 362 F.3d 28, 32-33 (2d Cir. 2004) (explaining that where "it is unclear on the face of the ALJ's opinion whether the ALJ considered . . . the applicability of the treating physician rule," a court may uphold the decision if a searching review of the record shows the substance of the rule was applied). However, in this case, it is clear to the Court that the ALJ failed to either explicitly or implicitly apply the treating physician rule or to adequately explain the weight given to Dr. Krawchenko's opinions. As a general rule, an ALJ "will always give good reasons . . . for

the weight [he] give[s] [a] treating source's opinion," 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2), and failure to do so merits remand. Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) (explaining that the Court "will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion"). For the reasons set forth above, the Court concludes that the ALJ failed to apply the proper legal standard in assessing the treating physician's opinions and failed to adequately explain his assessment of the treating physician's opinions. Therefore, the Court recommends remand for a proper analysis of Dr. Krawchenko's opinions from April 5, 2006 forward.

Plaintiff also argued that the ALJ ignored the opinions of treating physician, Richard L. Withington. Plaintiff's Brief, p. 16. The record shows that Dr. Withington examined Plaintiff's cervical spine injury on four occasions from May 25, 2004 through July 19, 2004 (R. at 155-159). When an MRI confirmed a large disc herniation at the C5-6 level, Dr. Withington referred Plaintiff to a neurosurgeon (R. at 155, 157, 162-63). Despite the evidence that Dr. Withington treated Plaintiff at a critical time, the ALJ did not mention or discuss Dr. Withington in his decision. On remand, the ALJ must also consider the medical opinions of Dr. Withington. See 20 C.F.R. §§ 404.1527(d); 416.927(d) (requiring the ALJ to "always give good reasons . . . for the weight [he] give[s] [a] treating source's opinion").

### b. The ALJ Must Necessarily Reconsider the Examining State Agency Physician's Opinions

Plaintiff further argues that the opinions of State agency consultative physician, James Naughton, D.O., and of the disability analyst "should not have been given any weight to contradict the medical evidence that the Plaintiff remained disabled after April

5, 2006." Plaintiff's Brief, p. 17. Defendant argues that the ALJ clearly did not give much weight to either of these opinions because the opinions were from 2005 and the ALJ found Plaintiff disabled from October 24, 2004 through April 5, 2006. Defendant's Brief, p. 17. Defendant does not address Plaintiff's argument that the ALJ erroneously relied on the opinions for the period after April 6, 2006. Plaintiff's Brief, p. 17.

In this case, the ALJ improperly failed to state or explain the weight he gave Dr. Naughton's opinions, but it appears to the Court that he rejected them (R. at 36). See Richardson v. Barnhart, 443 F.Supp.2d 411, 425 (W.D.N.Y. 2006) (finding legal error where ALJ failed to explain the weight given to the Commissioner's medical consultants). Dr. Naughton examined Plaintiff on August 31, 2005 and found only minimal limitations (R. at 189). However, as Defendant noted, the ALJ found that Plaintiff was disabled from October 24, 2004 through April 5, 2006 (R. at 38). Thus, it appears to the Court that the ALJ rejected Dr. Naughton's opinions. Substantial evidence supports such a rejection because, for example, on August 23, 2005, Dr. Krawchenko opined that Plaintiff could not carry out normal activities and had difficulty lifting more than two pounds (R. at 202).

Plaintiff argues that the ALJ improperly relied on Dr. Naughton's opinions to formulate the RFC beginning April 6, 2006. Plaintiff's Brief, p. 17. However, the ALJ's RFC determination explicitly relies on limited portions of Dr. Krawchenko's April 5, 2006 treatment note (R. at 38-39). Although it appears to the Court that the ALJ rejected Dr. Naughton's opinions, it is possible that the ALJ in fact relied in part upon Dr. Naughton's opinions to formulate the April 6, 2006 RFC. Given the lack of clarity, the Court also recommends remand so that the ALJ can "explain in the decision the weight given to

the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 416.927(f)(2)(ii). Furthermore, on remand the ALJ should clarify the bases for his RFC determination. See Hogan v. Astrue, 491 F.Supp.2d 347, 354 (W.D.N.Y. 2007) (explaining that an ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)") (quoting S.S.R. 96-8p, 1996 WL 374184, at *7); see also White v. Sec'y of Health & Human Servs., 910 F.2d 64, 65 (2d Cir. 1990) ("[T]he failure to specify the basis for a conclusion as to residual functional capacity is reason enough to vacate a decision.").

Plaintiff also argued that the ALJ improperly relied on the disability analyst's opinion. Plaintiff's Brief, p. 17. However, the ALJ properly noted that the disability analyst's RFC assessment was not completed by a physician and therefore not entitled to assessment as a medical opinion. See Hopper v. Comm'r of Soc. Sec., 2008 WL 724228, at *10 (N.D.N.Y. Mar. 17, 2008) (finding a disability analyst's opinions are "not a medical source opinion entitled to any weight.").

### c. The ALJ Did Not Err in Assessing Listing 1.04(A)

Plaintiff argues that although the ALJ properly found Plaintiff disabled from October 24, 2004 through April 5, 2006, "he improperly failed to recognize that one basis for plaintiff's disability is that his condition meets listing 1.04A" and that Plaintiff continues to meet the Listing. Plaintiff's Brief, p. 10-14. Defendant argues that the evidence after April 6, 2006 is clearly inconsistent with the criteria for Listing 1.04(A). Defendant's Brief, pp. 15-16.

As an initial matter, the Court notes that the first part of Plaintiff's argument is moot because, although the ALJ did not find Plaintiff met Listing 1.04(A) between October 24, 2004 and April 5, 2006, he did find that Plaintiff was disabled during that time period.

With respect to the period after April 5, 2006, the ALJ found that Plaintiff's impairments did not meet a Listing, although he did not consider any specific Listings or explain his finding (R. at 38). Courts have required an ALJ to provide an explanation as to why the claimant failed to meet or equal the Listings, "[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." Kuleszo v. Barnhart, 232 F.Supp.2d 44, 52 (W.D.N.Y. Sept. 30, 2002). However, if an ALJ's decision lacks an express rationale for finding that a claimant does not meet a Listing, a Court may still uphold the ALJ's determination if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982).

In this case, after April 5, 2006 Plaintiff's impairments could not have met Listing 1.04(A) because the medical evidence shows that by April 5, 2006 Plaintiff had no reflex loss and almost no loss of strength (R. at 197-98), required criteria of Listing 1.04(A).[8] See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A § 1.04(A); Zebley, 493 U.S. at 530; see, e.g., McKinney v. Astrue, No. 5:05-CV-0174, 2008 WL 312758, at *5 (N.D.N.Y. Feb. 1, 2008) (finding the ALJ's decision that the Plaintiff did not meet Listing 1.04(A) supported by substantial evidence where the Plaintiff's did not satisfy all the criteria symptoms of the Listing). Therefore, the Court finds that the ALJ's conclusion that Plaintiff's

---

[8] Listing 1.04(A) in this case required a disorder of the spine with "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, [and] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A § 1.04(A).

impairments did not meet or equal a Listing was supported by substantial evidence. See Berry, 675 F.2d at 468.

### d. Credibility Must Necessarily be Reconsidered

Plaintiff also argues that the ALJ improperly assessed credibility. Plaintiff's Brief, pp. 21-22. Because the Court has already concluded that the treating physician's opinions and the consultative physician's opinions were improperly assessed, the ALJ's analysis of Plaintiff's subjective allegations is necessarily flawed. See Social Security Ruling 96-7p, 1996 WL 374186, at *5 (S.S.A. 1996) (explaining that a credibility assessment "must be based on a consideration of all the evidence in the case record" including the medical evidence, diagnoses, medical opinions, and statements from physicians or psychologists); see also 20 C.F.R. §§ 404.1529(a); 404.1512(b)(2)-(6); 404.1513(b)(1), (b)(4), (b)(5), (d). Therefore, on remand, the ALJ must reconsider Plaintiff's symptoms in light of his findings regarding Dr. Krawchenko's, Dr. Withington's, and Dr. Naughton's opinions.

### e. The ALJ's Conclusion that Plaintiff Medically Improved is Necessarily Flawed

Plaintiff argues that the ALJ "improperly concluded that plaintiff enjoyed medical improvement on April 6, 2006." Plaintiff's Brief, pp. 18-20. Because the Court has already found that the ALJ improperly assessed the pertinent medical opinions and that he must properly explain the basis for his April 6, 2006 RFC determination, the underlying conclusion that Plaintiff experienced medical improvement on April 6, 2006 is necessarily flawed and must be reconsidered upon remand.

### f.  The ALJ Must Reconsider the VE's Testimony

Finally, Plaintiff argues that the ALJ misrepresented the VE's testimony because he failed to acknowledge the VE's statements that there would be no work available for the claimant if the hypothetical included the need to change positions at will or the need for more than one unscheduled break. Plaintiff's Brief, p. 24. The Court has already concluded that the ALJ improperly assessed Dr. Krawchenkio's opinions that Plaintiff needed to change positions at will and take rest breaks as needed, including how the VE's testimony compounded the error. See supra Part III.B.2.a (discussing the treating physician error and the significance of the VE's testimony). Therefore, on remand, the ALJ must also reconsider the VE's testimony after properly weighing the treating physician's opinions.

### IV.   Conclusion

After carefully examining the administrative record, the Court finds the Commissioner's decision is not supported by substantial evidence and not determined in accordance with the applicable law. Specifically, the ALJ failed to apply the treating physician rule and failed to explain the weight he gave to either the treating physician's or the consultative physician's opinions.

Based on the foregoing, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge

DATED: May 27, 2010
Syracuse, New York

### Orders

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>**. Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

_____
Victor E. Bianchini
United States Magistrate Judge

DATED: May 27, 2010
Syracuse, New York